UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PAMELA CORE, | : | Case No. 3:11-cv-166 |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | Magistrate Judge Michael R. Merz |
| vs. | : | |
| CHAMPAIGN COUNTY BOARD OF COUNTY COMMISSIONERS, | : | |
| Defendants. | : | |

**DECISION AND ENTRY: (1) ADOPTING IN PART AND MODIFYING IN PART THE DISPOSITION RECOMMENDED BY THE MAGISTRATE JUDGE IN THE REPORT AND RECOMMENDATIONS (DOC. 30); (2) OVERRULING IN PART AND SUSTAINING IN PART DEFENDANT'S OBJECTIONS (DOC. 31); AND (3) GRANTING DEFENDANT'S RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS ON THE ISSUE OF PUNITIVE DAMAGES AND DENYING THE REMAINDER (DOC. 25)**

This civil case is before the Court on Defendant's Objections to the Report and Recommendations of the United States Magistrate Judge, Michael R. Merz, who recommended that Defendant's Renewed Motion for Judgment on the Pleadings be denied. (Doc. 30). Plaintiff filed a Response to Defendant's Objections. (Doc. 32). The Objections are ripe for decision by the Court.

## I. FACTS

Plaintiff Pamela Core asserts claims against Defendant under the Americans with Disabilities Act ("ADA") and also asserts a disability claim under Ohio law. (Doc. 22). Plaintiff suffers from asthma and a severe chemical sensitivity to certain perfumes and other scented products. (Doc. 22, PAGEID 151).

Plaintiff began employment with the Champaign County Department of Job and Family Services ("DJFS") in February 2003. (*Id.*) Beginning in February 2008, Plaintiff began experiencing difficulty breathing at work when within close proximity to particular co-workers. (*Id.*) Plaintiff alleges that the co-workers wore a certain perfume, Japanese Cherry Blossom, that triggered her breathing difficulty. (*Id.*) As a result, Plaintiff requested that the DJFS ask employees to refrain from wearing the perfume at work. However, no action was taken as a result of her request and Plaintiff's exposure to the perfume at work continued, resulting in progressively more severe reactions. (*Id.*)

Eventually, in February 2010, Plaintiff's exposure to the perfume resulted in Plaintiff seeking emergency treatment. (*Id.*) Within the days following Plaintiff's emergency treatment, certain co-workers apparently mocked Plaintiff's reaction to the exposure in posts on Facebook. (Doc. 22, PAGEID 151-152, 158). Further, these co-workers continued to intentionally wear the perfume "knowing the reaction it caused to the Plaintiff." (Doc. 22, PAGEID 152). Additionally, Plaintiff alleged that the DJFS never reprimanded these employees for such behavior. (*Id.*)

In February 2010, a nurse practitioner, Angela Rutan, wrote a letter to Plaintiff's employer advising of Plaintiff's recent emergency treatment resulting from her exposure to the perfume at work. (Doc. 22-3, PAGEID 159). Nurse Rutan recommended that Plaintiff's "coworkers be advised" of Plaintiff's allergy, noting that "[o]bviously, in public there would be no way to prevent this, but one would expect the employer to make this announcement to those who do work with Ms. Core." (*Id.*)

The DJFS director requested additional information from Nurse Rutan (Doc. 22-4, PAGEID 160), to which Nurse Rutan responded, and again noted, that it would be "impossible to limit" Plaintiff's exposure to the perfume worn by members of the public having access to the DJFS facility. (Doc. 22-5, PAGEID 161). Nurse Rutan, nevertheless, stated that Plaintiff's exposure to perfumes "can be controlled simply by requesting all staff to avoid some of those major triggers for her out of respect." (*Id.*)

Thereafter, on March 11, 2010, the director sent an email to DJFS employees requesting that they not personally go into Plaintiff's office to speak with her, and instead, communicate with Plaintiff via telephone or email only. (Doc. 22-6, PAGEID 162). The director also requested that Plaintiff not go into the cubicles of other staff, and instead, to have discussions with other staff out in better ventilated open areas of the office, including a conference room or a job club room. (*Id.*)

By the end of March 2010, however, Plaintiff went on leave as a result of her exposure to the perfume in the workplace. (Doc. 22, PAGEID 153). Thereafter, in an effort to return to work, Plaintiff requested, as an accommodation of her alleged disability, to perform her work from home to avoid exposure to perfume in the workplace. (Doc. 1-1, PAGEID 14-15). The DJFS rejected Plaintiff's proposed accommodation to work from home via a letter from its attorney, which Plaintiff attached to the original Complaint. (Doc. 1-1, PAGEID 16-18).

The DJFS eventually proposed allowing Plaintiff's use of an inhaler at work, allowing Plaintiff to go outside to alleviate any symptoms as often as necessary, to

consider any recommendations of a pulmonologist or recommendations based on the results of a methacholine challenge or provocation challenge, and sending an email to staff requesting that they "refrain from wearing Japanese Cherry Blossom perfume while at work." (Doc. 1-1, PAGEID 23). DJFS also proposed posting the email at locations throughout its facility. (*Id.*) Plaintiff, however, rejected these proposed accommodations "as being too narrow and not providing her with sufficient protection." (Doc. 1).

Plaintiff then filed this action. (*Id.*) In the original Complaint, Plaintiff referenced pre-litigation correspondence between Plaintiff's counsel and Defense counsel and attached the correspondence as exhibits to the Complaint. (Doc. 1, PAGEID 4, Doc. 1-1, PAGEID 14-31). Following a preliminary pretrial conference, Defendant moved for judgment on the pleadings. (Doc. 7). The Magistrate Judge recommended that Defendant's original Motion for Judgment on the Pleadings be granted because the pre-litigation correspondence authored by Defense counsel and attached to the original Complaint "effectively pleaded facts fatal to [Plaintiff's] claim." (Doc. 12, PAGEID 99).

Following objections to the initial Report and Recommendations, the Magistrate Judge issued a Supplemental Report and Recommendations (Doc. 14) in which the Magistrate Judge confirmed his recommendation that Defendant's Motion be granted, but stated that "the Court would welcome a motion to amend the Complaint to eliminate the attachments that cause a problem" so that "[t]he case can then be litigated on the merits." (Doc. 14, PAGEID 113). Plaintiff then moved for leave to file an Amended Complaint, which was granted. (Docs. 16, 21). Defendant's original Motion for Judgment on the

-4-

Pleadings was deemed moot as a result. (Doc. 21).

Plaintiff then filed the Amended Complaint setting forth the same essential factual allegations. (Doc. 22). The Amended Complaint, however, did not attach the pre-litigation correspondence between counsel. (Doc. 22). Defendant then filed a Renewed Motion for Judgment on the Pleadings (Doc. 25), which the Magistrate Judge recommends be denied. (Doc. 30).

## II. ANALYSIS

Defendant asserts three objections to the Report and Recommendations: (1) that judgment on the pleadings is proper based solely on information contained in the Amended Complaint and attached thereto; (2) that the Magistrate Judge erroneously failed to consider exhibits attached to Plaintiff's original complaint in deciding the Renewed Motion; and (3) that the Magistrate Judge failed to consider Defendant's assertion that punitive damages are not recoverable as a matter of law.

### A.  Attachments to the Original Complaint

The Court first considers Defendant's second objection asserting that statements within attachments to the original Complaint should be considered as true in determining Defendant's Renewed Motion for Judgment on the Pleadings. Certainly, Fed. R. Civ. P. 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." However, even assuming that attachments to an original complaint should be considered in determining a motion directed to an amended complaint, the Court concludes that "considering" the attachments does not necessarily

mean that all statements set forth therein must be accepted as true. *See Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008) (holding that "treating [attachments] as part of a pleading does not mean that we assume everything [stated in an attachment to a pleading] is true").

In *Jones,* the Sixth Circuit stated that:

> Where a plaintiff attaches to the complaint a document containing unilateral statements made by a defendant, where a conflict exists between those statements and the plaintiff's allegations in the complaint, and where the attached document does not itself form the basis for the allegations, Rule 10(c) "does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact."

*Id*. (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449 (7th Cir. 1998). "Rather than accepting as true 'every word in a unilateral writing by a defendant and attached by a plaintiff to a complaint,' a court must consider such factors as, 'why a plaintiff attached the documents, who authored the documents, and the reliability of the documents.'" *WINBCO Tank Co., Inc. v. Palmer & Cay of Minn., L.L.C.*, 435 F.Supp.2d 945, 955 (S.D. Iowa 2006) (citing *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 454).

Here, a review of the original Complaint demonstrates that the pre-litigation correspondence authored by Defense counsel was attached to the original complaint simply to evidence the DJFS's rejection of Plaintiff's requested accommodations and to evidence the actual accommodations offered by the DJFS. For purposes of deciding a

Rule 12(c) motion, this correspondence, at most, is accepted as true only to such extent. Defense counsel's statements regarding the unreasonableness of Plaintiff's requested accommodations are not accepted as true. Accordingly, consideration of Defense counsel's pre-litigation correspondence would not result in a finding that Plaintiff's requested accommodations were unreasonable.

Defendant, however, also focuses on a statement of Plaintiff's counsel in pre-litigation correspondence attached to the original complaint, namely, counsel's statement that "I understand [Plaintiff] is not entitled to [the] accommodation [of working from home] as a matter of law." (Doc. 1-1, PAGEID 27-28). Defendant argues that attaching correspondence containing this statement to the original Complaint acts as a judicial admission. Defendant also argues that counsel's statement is supported by law.

With regard to the assertion that working from home is an unreasonable accommodation as a matter of law, such blanket assertion is not necessarily supported by Sixth Circuit precedent. Certainly, the Sixth Circuit has agreed with the general proposition that an employer is not required "to allow disabled workers to work at home[;]" however, the court also recognizes the possibility of exceptions to the general rule "in the unusual case where an employee can effectively perform all work-related duties at home[.]" *Smith v. Ameritech*, 129 F.3d 857, 867 (6th Cir. 1997) (adopting the reasoning in *Vande Zande v. Wisconsin*, 44 F.3d 538 (7th Cir.1995) and *Tyndall v. Nat. Educ. Ctrs., Inc.*, 31 F.3d 209 (4th Cir.1994)).

In *Vande Zande*, the court believed that "it would take a very extraordinary case for the employee to be able to create a triable issue of the employer's failure to allow the employee to work at home." *Vande Zande*, 44 F.3d at 545. In reaching such a conclusion, the court noted that "[m]ost jobs in organizations public or private involve team work under supervision rather than solitary unsupervised work, and team work under supervision generally cannot be performed at home without a substantial reduction in the quality of the employee's performance." *Id.* at 544. The court also astutely noted that "[t]his will no doubt change as communications technology advances, but is the situation today." *Id.*

*Vande Zande* was decided seventeen years ago. Certainly, communications technology has advanced to such a state that the proposition of employees working from home is not quite as burdensome or untenable as it perhaps was in 1995. Today, in this Court's view, it may not "take a very extraordinary case for the employee to be able to create a triable issue of the employer's failure to allow the employee to work at home." *Id.* at 545. Nevertheless, the ultimate determination of reasonableness is a fact specific inquiry and a question for the fact-finder.

The next question, however, is whether attaching pre-litigation correspondence from Plaintiff's counsel purportedly conceding an issue of law acts as a judicial admission that cannot be cured by subsequent amendment. Even assuming the statement of Plaintiff's Counsel in the correspondence needlessly attached to the original Complaint

-8-

can be deemed an admission, the Court agrees with the Magistrate Judge and sees no reason why Plaintiff cannot be granted relief from purported admissions in the pleadings by a subsequent amendment pursuant to Fed. R. Civ. P. 15.

As noted by comments to Fed. R. Civ. P. 36, "[i]n form and substance a Rule 36 admission [in response to a request for admission] is comparable to an admission in pleadings[.]" *See* Advisory Committee's Note, 48 F.R.D. 487, 534 (1970)). Certainly, Rule 36(b) expressly permits a Court to withdraw an admission "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." District courts have "considerable discretion over whether to permit withdrawal or amendment of admissions." *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 154 (6th Cir. 1997) (citation omitted).

The standard for allowing an amendment of the pleadings pursuant to Fed. R. Civ. P. 15(a)(2), is not entirely inconsistent with the standard for the withdrawal of admissions under Rule 36(b). *See Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001) (stating that "leave to amend . . . shall be freely given 'when justice so requires[,]'" and that factors to consider in deciding the motion include whether the amendment would substantially prejudice the opposing party). Certainly, in granting leave to amend in the first instance, the Magistrate Judge reasoned that an amendment furthered the interest of justice, promoted resolution of the case on the merits and did not prejudice Defendant.

The Court concludes that this same reasoning is sufficient to deem any previously plead admission withdrawn, if indeed the previously attached correspondence acted as such.

Based on the foregoing, the Court concludes that the Magistrate Judge did not err in declining to consider all statements in attachments to the original Complaint as true for purposes of deciding Defendant's Renewed Motion for Judgment on the Pleadings. Accordingly, Defendant's Objections to this extent are **OVERRULED**.

### B. Merits of Renewed Motion Based Solely on Attachments to the Amended Complaint

Defendant also contends that the Renewed Motion for Judgment on the Pleadings should be granted based solely on the allegations contained in the Amended Complaint and attachments thereto. Defendant argues that attachments to the Amended Complaint "establish that it is impossible to accommodate [Plaintiff's] alleged disability" because, essentially, it is impossible to completely limit Plaintiff's exposure to perfumes in the workplace considering the workplace provides access to members of the public.

The Court does not find that these statements preclude recovery. The purpose of the requested accommodation was not to completely eliminate any possibility that perfume and other fragrances will be worn into the DJFS workplace by members of the public. Instead, the purpose of the proposed recommendation was to minimize and limit Plaintiff's potential exposure to perfumes that trigger her severe asthma. Plaintiff's Objection to this extent is without merit.

In its reply in support of its Renewed Motion, Defendant also argues that the DJFS

offered the accommodation proposed by Nurse Rutan when it proposed emailing employees and requesting that they refrain "from wearing the offending perfume" in the workplace. (Doc. 27, PAGEID 189). Correspondence attached to the original Complaint shows that the DJFS proposed emailing employees and requesting that they refrain "from wearing Japanese Cherry Blossom perfume while at work." (Doc. 1-1, PAGEID 30).

However, the Court agrees with the Magistrate Judge's conclusion that "Plaintiff's request through counsel for accommodation was much broader than a request to ask co-workers to avoid the Perfume." (Doc. 12, PAGE 99). First, Plaintiff requested a fragrance-free workplace, not simply a Japanese Cherry Blossom-free workplace. Second, Plaintiff requested a an official workplace *policy* not a mere request.

Certainly, Plaintiff's request for an actual policy, as opposed to a mere request, is reasonable on the face of the pleadings in light of: (1) Plaintiff's co-workers "thoroughly unconscionable behavior" (Doc. 12, PAGEID 99) of apparently mocking Plaintiff's severe allergic reaction just days after exposure to perfume "required Plaintiff to go to the emergency room for treatment" (Doc. 22, PAGEID 151); (2) Plaintiff's co-worker's continued "actions of intentionally wearing the Perfume knowing the reaction it caused to the Plaintiff" (Doc. 22, PAGEID 152); and (3) the DJFS's failure to reprimand employees for any of the foregoing behavior (Doc. 22, PAGEID 152).

Accordingly, the Court **OVERRULES** Defendant's first Objection and concludes that Plaintiff sufficiently pleads a plausible claim for relief.

### C. Punitive Damages

Finally, Defendant contends that it is entitled to judgment on the pleadings with regard to Plaintiff's prayer for punitive damages because such damages are not recoverable against a political subdivision. The Report and Recommendations of the Magistrate Judge does not address the issue of punitive damages.

Specifically, 42 U.S.C. § 1981a(b)(1), which is titled "[d]amages in cases of intentional discrimination in employment[,]" provides that:

> A complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual. (Emphasis supplied).

Pursuant to § 1981a(b)(1), Plaintiff cannot recover punitive damages because Defendant is a government agency. *See Burns v. Principi*, No. 3:04-410, 2005 WL 1638733, *8 (M.D. Tenn. Jul. 6, 2005).

Plaintiff contends that punitive damages are recoverable against a political subdivision pursuant to Ohio Rev. Code § 4112.99. The Court concludes otherwise. As noted by one court:

> In the general case, § 4112.99 authorizes an award of punitive damages upon a showing of actual malice. *Rice v. Certain Teed Corp.*, 84 Ohio St.3d 417, 422, 704 N.E.2d 1217 (1999). However, punitive or exemplary damages may not be awarded against a political subdivision unless such damages are specifically authorized by statute. See Ohio Rev.Code § 2744.05(A); *Spires v. City of Lancaster*, 28 Ohio St.3d 76, syllabus, 502 N.E.2d 614 (1986);

> *Ranells v. Cleveland*, 41 Ohio St.2d 1, 6-8, 321 N.E.2d 855 (1975);
> *Franklin v. City of Columbus*, 130 Ohio App.3d 53, 63, 719 N.E.2d
> 592 (1998). Since there is no language in §§ 4112.02 and 4112.99
> expressly authorizing an award of punitive damages against a
> political subdivision, plaintiff may not recover punitive damages
> against [a political subdivision].

*Fernandez v. City of Pataskala, Ohio*, No. 2:05-cv-75, 2006 WL 3257389, *3 (S.D. Ohio Nov. 9, 2006); *see also Henderhan v. Jackson Twp. Police Dep't*, No. 2008-CA-00055, 2009 WL 531000, *4 (Ohio App. Mar. 2, 2009).

Based on the foregoing, Defendant's Objection in this regard is **SUSTAINED** and Defendant's Renewed Motion for Judgment on the Pleadings with regard to the issue of punitive damages is **GRANTED**.

### III. CONCLUSION

Accordingly: (1) the disposition recommended in the Report and Recommendations (Doc. 30) is **ADOPTED IN PART** and **MODIFIED IN PART**; (2) Defendant's Objections (Doc. 31) are **OVERRULED IN PART** and **SUSTAINED IN PART**; and (3) Defendant's Renewed Motion for Judgment on the Pleadings (Doc. 25) is **GRANTED** on the issue of punitive damages, with the remainder of the Renewed Motion **DENIED**.

**IT IS SO ORDERED.**

Date: 7/30/12

Timothy S. Black
United States District Judge