UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PAMELA CORE,     :  Case No. 3:11-cv-166
           :
  Plaintiff,     :  Judge Timothy S. Black
           :
vs.         :
           :
CHAMPAIGN COUNTY BOARD :
OF COUNTY COMMISSIONERS, :
           :
  Defendant.    :

_____

**DECISION AND ENTRY GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (Docs. 42, 48)**
_____

This civil case is before the Court on the Motion for Summary Judgment filed by

Defendant the Champaign County Board of County Commissioners. (Doc. 48).[1] Plaintiff

Pamela Core filed a Memorandum in Opposition. (Doc. 49). Defendant then filed a

Reply Memorandum. Defendant's Motion is now ripe for consideration and

determination by the Court.

## I. ALLEGATIONS

Plaintiff Pamela Core asserts claims against Defendant under the Americans with

Disabilities Act ("ADA") and also asserts a disability claim under Ohio law. (Doc. 22).

Plaintiff alleges that she suffers from asthma and a severe chemical sensitivity to certain

---

[1] Defendant originally filed a Motion for Summary Judgment on July 13, 2012 (Doc. 42), but subsequently filed an Amended Motion (Doc. 48) which essentially reduced the total pages in an effort to comply with the page limitation set forth in Local Rule 7.2(a)(3). For purposes of this Order, the Court refers to both the original Motion and the Amended Motion as a single Motion.

perfumes and other scented products, and is, therefore, substantially limited in the major life activity of breathing. (Doc. 22, PAGEID 151, 154).

## II. FACTS[2]

Champaign County Department of Jobs and Family Services ("DJFS") is responsible for administering programs involving employment and training services as well as other social services for adults and children of Champaign County, Ohio. DJFS employs approximately 48 employees. DJFS hired Plaintiff in February 2003 to the position of Social Service Worker I ("SSWI"), a position she occupied throughout her employment with DFJS. Plaintiff ceased physically reporting to DJFS on March 31, 2010, and has not performed any job functions for DJFS since that date.

DJFS maintains a written job description for the position of SSWI, which accurately depicts many, but not all, of the job functions performed by Plaintiff in the course of her employment. Essential functions of Plaintiff's SSWI position include: (1) conducting onsite inspections of childcare facilities to ensure compliance with state standards; (2) interacting with non-employee clients and children relative to DJFS services; (3) attending and conduct trainings; (4) interacting with clients, the public, and employees both on and off the work site; (5) being subject to necessary direct supervision; and (6) performing in-house client interviews.

---

[2] Pursuant to the Standing Order of the Court, Defendant filed a Proposed Statement of Undisputed Facts. (Doc. 49, PAGEID 2089-2092). Plaintiff responded to the Proposed Statement of Undisputed Facts by admitting the substance of the Facts stated here. (Doc. 49, PAGEID 2110-2111).

DJFS is open to the public and maintains office space within a common structure housing several different agencies and organizations. Visitors and employees enter and exit DJFS unannounced on a daily basis. DJFS cannot provide Plaintiff a work environment entirely free of chemicals, perfumes and/or other allergens.

Plaintiff's primary healthcare provider, Nurse Practitioner Rutan ("Nurse Rutan"), informed DJFS that Plaintiff can only work in an environment "free of perfume." Plaintiff's treating physician informed DJFS that Plaintiff can only work in an environment "without fumes she is allergic to."

At all times relevant to this matter, Plaintiff sells jewelry at craft shows open to the public. At craft shows, Plaintiff sells jewelry out of a vendor's booth measuring ten feet by ten feet. Plaintiff has never notified craft show attendees of her alleged disability. Plaintiff's alleged disability does not prevent her from shopping at malls, eating at restaurants, shopping at grocery stores, banking at banks, wearing perfume, attending college classes, or walking around the neighborhood. On March 11, 2010, DJFS notified all staff via email providing "requests/recommendations" to prevent Plaintiff from being exposed to perfumes/fragrances.

Plaintiff applied for leave from work under the Family Medical Leave Act ("FMLA") on or about June 30, 2010, which DJFS approved. On or about April 7, 2010, DJFS offered to permit Plaintiff to work "shorter work day hours, [and to have] her own office and private bathroom facilities," to which Plaintiff did not respond.

Plaintiff exhausted her FMLA leave entitlement in September 2010. DJFS placed Plaintiff on inactive pay status in September 2010. On or about December 8, 2010, DJFS offered to permit Plaintiff to return to work with the use of an inhaler and with breaks to go outside into the fresh air, an offer Plaintiff rejected. On or about January 7, 2011, DJFS offered to instruct staff to "refrain from wearing Japanese Cherry Blossom perfume while at work," an offer Plaintiff rejected. On or about February 3, 2011, DJFS offered to post a notice in conspicuous locations throughout the agency requesting that individuals refrain from wearing Japanese Cherry Blossom perfume, an offer Plaintiff rejected.

On or about February 21, 2011, DJFS placed Plaintiff on involuntary disability separation. To date, Plaintiff has not applied for reinstatement from her involuntary disability separation.

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

"Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Technologies, Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010) (citing Fed. R. Civ. P. 56(e)(2)). Instead, the party opposing summary judgment "must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." *Id*. (citing Fed. R. Civ. P. 56(e)(2)).

## IV. ANALYSIS

Defendant moves for summary judgment arguing: (A) that Plaintiff fails to prove a disability under the Americans with Disabilities Act ("ADA"); (B) Plaintiff is not other wise qualified for the position in which she was employed; (C) Plaintiff cannot be considered otherwise qualified for the position she was employed because she rejected good faith offers of accommodation; (D) Plaintiff fails to identify a reasonable and effective accommodation; and (E) Plaintiff suffered no adverse employment action.

Under the ADA, employers are required to reasonably accommodate disabled individuals, unless the accommodation imposes an undue hardship. 42 U.S.C. § 12112(b)(5). Failure to reasonably accommodate an employee with a disability is

unlawful discrimination under the ADA. *Id*.; *Hoskins v. Oakland County Sheriff's Dep't.*, 227 F.3d 719, 724 (6th Cir. 2000). "In order to establish a prima facie of disability discrimination under the ADA for failure to accommodate, a plaintiff must show that: (1) [he or] she is disabled within the meaning of the Act; (2) [he or] she is otherwise qualified for the position, with or without reasonable accommodation; (3) [his or] her employer knew or had reason to know about her disability; (4) [he or] she requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Myers v. Cuyahoga County, Ohio*, 182 Fed. Appx. 510 (6th Cir. 2006) (citing *DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir. 2004)).

A.    **Whether Plaintiff is Disabled**

Defendant first contends that Plaintiff cannot prove a disability entitled to protection under the ADA because Plaintiff is not substantially limited in the major life activity of breathing. The term "'[d]isability' means, with respect to an individual - - a physical or mental impairment that substantially limits one or more major life activities of such individual[.]" 42 U.S.C. § 12102(1). Plaintiff alleges in her Amended Complaint that she is substantially limited in her ability to breathe. Breathing is a major life activity recognized in 42 U.S.C. § 12102(2)(A). Accordingly, Plaintiff is disabled if she can show that she is substantially limited in her ability to breathe.

Prior to May 24, 2011, the term "substantially limits" was defined in the Code of Federal Regulations as "[s]ignificantly restricted as to the condition, manner or duration

under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii).[3] The regulations effective before to May 24, 2011, set forth three factors to be considered "in determining whether an individual is substantially limited in a major life activity[,]" namely, "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

Here, Defendant argues that Plaintiff is not substantially limited in the major life activity of breathing because her purported asthma is triggered by a single irritant, one she predominately encountered only in the workplace. Defendant argues that Plaintiff's reaction to the scent of Japanese Cherry Blossom has little impact on her daily activities of life. Plaintiff walks regularly in her neighborhood, shops, makes jewelry, and attends trade shows to sell her jewelry, and performs other activities of daily living all without breathing difficulties resulting from her asthma. The Court notes that Plaintiff recalls less than five encounters with Japanese Cherry Blossom outside of DJFS facility over a three year period. In fact, in April 2012, Plaintiff could not recall her last exposure, noting only

---

[3] Plaintiff identifies the standard applicable in this case in determining whether her impairment substantially limits her ability to breathe as the "average person" standard. 29 C.F.R. § 1630.2(j)(1)(ii), effective post-May 24, 2011, provides that "[a]n impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii).

that "[i]t's been awhile." (Doc. 35, PAGEID 601).

Plaintiff's response on the issue of whether she is disabled focuses little on her asthma and significantly on "anxiety and depression" resulting from DJFS's alleged failure to respond to her complaints about Japanese Cherry Blossom in the workplace. Plaintiff does not point to evidence showing that depression and anxiety impacted the major life activity of breathing, or any other major life activity. The suggestion that Plaintiff was bullied in the workplace because of her sensitivities to Japanese Cherry Blossom is insufficient to establish a disability, at least in the absence of evidence that the resulting depression and anxiety substantially limited a major life activity. Plaintiff makes no such showing in this case.

With regard to asthma, Plaintiff simply points to her asthma diagnosis and a single trip to the emergency room. Plaintiff does not point to any evidence demonstrating the actual impact Plaintiff's asthma has (or had) on her overall ability to breathe. Under the ADA effective prior to January 1, 2009, courts recognized that "[a]sthma can, in some cases, qualify as a disability[.]" *Boker v. Sec. Dept of Treasury*, No. 1:07-cv-446, 2009 WL 3199074, *5 (S.D. Ohio Sept. 29, 2009).

However, under the ADA prior to January 1, 2009, simply "[s]uffering from asthma does not constitute a *per se* substantial limitation on the major life activity of breathing[.]" *Id*. Instead, asthma typically arose to the level of a disability in instances where "plaintiff has a long history of asthmatic attacks and endures numerous and severe

restrictions on daily activities as a result of the condition." *Id*. If a person "suffer[ed] asthma attacks only in response to particular stimuli and [was] able to engage in almost all normal life activities, courts [were] . . . less likely to conclude that the plaintiff is substantially limited in the major life activity of breathing." *Id*.

Based on *Boker*, the Court concludes that, under the ADA applicable prior to January 1, 2009, Plaintiff was not disabled because she was not substantially limited in the major life activity of breathing. Plaintiff's history of exposure to Japanese Cherry Blossom prior to January 1, 2009 predominately occurred within the DJFS facility[4] and occurred approximately once a week or every other week. When exposed, Plaintiff suffered from difficulty breathing,[5] though Plaintiff fails to point to evidence regarding the severity or duration of these symptoms aside from a single trip to the emergency room. Outside of the DJFS facility, Plaintiff rarely encountered Japanese Cherry Blossom and was able to perform all activities, including regular walks in her neighborhood, all without breathing difficulty.

The Court notes, however, that the analysis is *Boker*, which involved conduct

---

[4] The Court focuses solely on Plaintiff's reaction to Japanese Cherry Blossom because, during her deposition, Plaintiff testified that her exposure to other fragrances generally resulted in headaches, nausea, coughing, a runny nose and sinus congestion. Plaintiff points to no evidence that her exposure to any other fragrance results in more than a minimal impact on Plaintiff's ability to breathe.

[5] Plaintiff also notes suffering from headaches, nausea and coughing, but it is not clear whether headaches or nausea affected Plaintiff's breathing. As noted by one court in a case where plaintiff suffered from "headaches, sinus trouble, watery eyes, shortness of breath, tightening of the chest, and nausea" upon exposure to certain fragrances: "a majority of the symptoms of which she complains are wholly unrelated to her breathing." *Franks v. Central Garden & Pet Co.*, No. 3:06-CV-68(CDL), 2007 WL 2320624, *4 n5 (M.D. Ga. Aug. 10, 2007).

occurring before January 1, 2009, may be impacted in this case because the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), effective January 1, 2009, provides that the term "disability" should be construed broadly. 42 U.S.C. § 12102(4)(A). Notably, the Sixth Circuit concludes that "the ADAAA does not apply to pre-amendment conduct[.]" *Jones v. Nissan North America, Inc.*, 438 Fed.Appx. 388, 387 n.9 (6th Cir. 2011) (citing *Milholland v. Sumner Cnty. Bd. of Educ.*, 569 F.3d 562, 567 (6th Cir.2009)).

Under the ADAAA, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(C). Further, under the ADAAA, "[a]n impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability." 42 U.S.C. § 12102(4)(C). In addition, when determining "whether an impairment substantially limits a major life activity[,]" medications and accommodations are not considered. 42 U.S.C. § 12102(4)(E).

Here, there is no genuine issue of material fact that Plaintiff is not disabled as that term was construed prior to January 1, 2009, *i.e.*, before the effective date of the ADAAA.

Moreover, even if the Court were to conclude, under the broad construction required by the ADAAA, that a genuine issue of material fact exists at to whether Plaintiff is disabled, summary judgment is proper for other reasons set forth below.

**B.      Reasonableness of Plaintiff's Proposed Accommodations**

Even assuming Plaintiff is disabled, Defendant argues that Plaintiff's claim must fail because she fails to show that her requested accommodations are reasonable.  Under the ADA, plaintiffs bear "'the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable.'" *Steward v. New Chrysler*, 415 F. App'x 632, 642 (6th Cir. 2011) (citing *Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104 (6th Cir.2009); *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862 (6th Cir.2007)).  "In order for an accommodation to be reasonable, it should be necessary in light of the plaintiff's known physical limitations."  *Johnson*, 344 F. App'x at 111 (citing *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539 (6th Cir.2008)).  A court properly grants summary judgment on a reasonable accommodation claim where a plaintiff fails to show that requested accommodations are reasonable.  *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 635 (6th Cir. 1998).

Here, Plaintiff argues that working from home or, alternatively, a fragrance-free workplace are reasonable accommodation requests.  With regard to Plaintiff's request to work from home as an accommodation, the Sixth Circuit has agreed with the general proposition that an employer is not required "to allow disabled workers to work at home, where their productivity inevitably would be greatly reduced."  *Smith v. Ameritech*, 129 F.3d 857, 867 (6th Cir. 1997) (citing *Vande Zande v. Wisconsin*, 44 F.3d 538 (7th Cir.1995)).   The Sixth Circuit also recognizes, however, the possibility of exceptions to

the general rule "'in the unusual case where an employee can effectively perform all work-related duties at home [.]'" *Id*. (citations omitted).

Here, Defendant points to evidence that Plaintiff's position at the DJFS required her to meet with non-employee clients regarding services, inspect and certify in-home daycare facilities, conduct and attend training sessions, input data into a state database only accessible at the DJFS facility,[6] and maintain physical files that are to be restricted to the DJFS facility. Defendant also points to Plaintiff's own admissions that she cannot perform all of the essential functions of her position at home. Plaintiff points to no evidence rebutting these facts. Accordingly, the Court finds that the requested accommodation that Plaintiff be permitted to work from home is not reasonable.

Next, Plaintiff requested, as an accommodation, that DJFS institute a fragrance-free workplace "policy" by requesting that employees "refrain from wearing scented products, including but not limited to, colognes, after-shave lotions, perfumes, deodorants, body-face lotions, hair sprays, or similar products" in the workplace. A reasonable jury could not conclude that the full extent of this requested accommodation is reasonable for a number of reasons.

First, while Plaintiff states that she experiences difficulty breathing upon being exposed to Japanese Cherry Blossom, she points to no evidence of significant breathing

---

[6] Plaintiff contends that there is no testimony that the state database is accessible only at the DJFS facility. (Doc. 49, PAGEID 2111). However, an affidavit of Sue Bailey-Evans, Director of the DJFS, states just that. (Doc. 42-1, PAGEID 1699).

difficulties upon exposure to any other fragrance and points to no evidence of breathing problems when encountering any other fragrances in the workplace. In fact, Plaintiff herself wears certain perfume. While Plaintiff testified that she experiences adverse symptoms when exposed to a limited number of other fragrances, these symptoms were limited to brief periods of headaches, stuffy nose, coughing, sinus congestion and nausea, *i.e.*, symptoms not significantly limiting Plaintiff's ability to breathe. *See Franks*, 2007 WL 2320624, *4 n5.

Thus, there is no need for a broad fragrance-free workplace encompassing the entire spectrum of products and scents when Plaintiff evidences difficulty breathing only upon exposure to a single scent, namely Japanese Cherry Blossom. Again, "[i]n order for an accommodation to be reasonable, it should be necessary in light of the plaintiff's *known* physical limitations." *Johnson*, 344 F. App'x at 111 (emphasis added) (citing *Nance*, 527 F.3d 539). The only breathing limitation evidenced by Plaintiff is difficulty occurring only upon exposure to Japanese Cherry Blossom.

Second, the Sixth Circuit has found that a fragrance-free workplace is objectively unreasonable. *See Montenez-Denman v. Slater*, 208 F.3d 214, 2000 WL 263279 (6th Cir. Mar. 1, 2000). The court in *Montenez-Denman* adopted the reasoning set forth by the district court, which stated that:

> a "fragrance-free" work environment still purports to require her employer to engage in the undue burden of establishing and enforcing a prohibition against "scents." This imposes an obligation on her employer to prohibit plaintiff's co-workers and those who

occasionally come into the office of their right to wear "scents," to engage in the burdensome and unseemly task of enforcing such a prohibition and to identify and rid plaintiff's workplace of many other common, scent producing agents such as cleaning supplies.

*Id*. at *2.

This Court also recognizes the burden that such a broad policy would have on individual employees who would have to alter all of their personal habits to ensure that all products of daily-living, *i.e.*, deodorant, lotions, hair products, etc., used in their private homes before coming into the workplace, are fragrant-free. As noted by other courts, "[t]here is nothing in the Act to suggest that the non-disabled population was expected to give up or substantially alter their lifestyle." *McDonald v. Potter*, No. 1:06-cv-1, 2007 WL 2300332, *43 (E.D. Tenn. Aug. 7, 2007) (citing *Kaufman v. GMAC Mortgage Corp.*, No. 04-CV-5671, 2006 WL 1371185 (E.D. Pa. May 17, 2006)).

Third, despite all of the numerous alleged exposures to Japanese Cherry Blossom in the workplace for over a two year period of time, Plaintiff states that she "demonstrated the ability to perform the essential functions of her job with no accommodation." (Doc. 49, PAGEID 2103). Plaintiff's admission in this respect is bolstered by the admission of Sue Bailey-Evans, Director of the DJFS, who testified that, "as far as a worker and getting the job done, [Plaintiff] was excellent. She does very good work." The aforementioned testimony is the only portion of the record referenced by either party regarding Plaintiff's actual ability to do her job.

"[W]here Plaintiff is able to perform the job without accommodation, plaintiff cannot demonstrate the objective reasonableness *of any desired accommodation*." *Black v. Wayne Center*, 225 F.3d 658, 2000 WL 1033026, *3 (6th Cir. Jul. 17, 2000) (emphasis added). Such holding is consistent with the definition of "reasonable accommodation," which includes "[m]odifications or adjustments to the work environment . . . that enable an individual with a disability who is qualified to perform the essential functions of that position[.]" At the very least, "[a]n employee's ability to perform all essential job functions without accommodation is a factor weighing against the reasonableness of an accommodation[.]" *Nawrot v. CPC Int'l*, 259 F.Supp.2d 716, 725 (N.D. Ill. 2003). Accordingly, Plaintiff fails to show that the broad request for a totally fragrance-free workplace is a reasonable accommodation.

Based on all of the foregoing, the Court concludes that Plaintiff fails to satisfy her burden of demonstrating that the accommodations she requested are reasonable.

### C.    Reasonableness of DJFS's Proposed Accommodations

Defendant also argues that Plaintiff's claims should be denied because Plaintiff rejected reasonable accommodations offered by DJFS. Insofar as Plaintiff suggests that an accommodation is required to enable her to perform the essential functions of her job, a "plaintiff's refusal to accept available reasonable accommodations precludes her from arguing that other accommodations should also have been provided." *Hankins v. The Gap, Inc.*, 84 F.3d 797, 802 (6th Cir. 1996).

Aside from DJFS's rejection of Plaintiff's unreasonable accommodation requests to work from home or for a fragrance-free workplace, DJFS ultimately offered every other accommodation Plaintiff requested, *i.e.*, advising staff of Plaintiff's reaction to Japanese Cherry Blossom and offering to request that employees refrain from wearing Japanese Cherry Blossom.  In fact, DJFS ultimately proposed all of the following specific accommodations: allowing Plaintiff to work shorter work days; allowing Plaintiff to have her own office and her own bathroom facilities; allowing Plaintiff to have and use an inhaler at work; allowing Plaintiff to exit the building as needed; considering any other accommodation recommended by a pulmonologist that examined Plaintiff; considering any recommendations based upon results of a methacholine challenge and/or provocation challenge; emailing all DJFS staff a memorandum stating:

> As an agency we strive to be sensitive to employees who may have perfume and chemical sensitivities.  Employees who are sensitive to perfumes and chemicals may suffer potentially serious health consequences.  In order to accommodate employees with known or believed perfume and/or chemical sensitivities, the Champaign County Department of Job and Family Services requests that you refrain from wearing Japanese Cherry Blossom perfume while at work.  The agency thanks you for your cooperation[;]

and posting the above memorandum in conspicuous locations within the DJFS facility. Plaintiff admittedly failed to respond to DJFS's offer to allow Plaintiff to work shorter work days and to allow Plaintiff to have her own office and her own bathroom facilities. Plaintiff rejected all of the other offered accommodations.

Plaintiff rejected DJFS's offer to email and post a memorandum requesting that employees refrain from wearing Japanese Cherry Blossom because the offered accommodation did not encompass all fragrances and because the offered accommodation provided no enforcement mechanism. With regard to the suggestion that the offered accommodation was too narrow because it did not encompass all fragrances, as noted above, such a broad workplace policy encompassing all fragrances is unreasonable based on the record in this case, which shows only that Plaintiff experiences significant breathing limitations only when exposed to Japanese Cherry Blossom and no other fragrance.

With regard to the contention that DJFS's proposed accommodation is unreasonable because it was a mere request set forth in a memorandum rather than a "policy," the Court first notes that the specific language proposed by Plaintiff as a policy simply "requests that [employees] refrain from wearing scented products[.]"[7] Thus, Plaintiff's requested "policy" is nothing more than a mere request, not an absolute prohibition.

Further, with regard to enforcement through disciplinary measures, an exhibit referenced repeatedly by Plaintiff shows that employees are already subject to discipline via the employee handbook for "[c]onduct violating . . . common decency" or for the

---

[7] Plaintiff, in her Memorandum in Opposition, also characterized the request as "a formal workplace policy . . . that encouraged employees to refrain from wearing strong scents." (Doc. 49, PAGEID 2098).

"discourteous treatment of others."[8]  Certainly, disciplining employees for ignoring a specific DJFS request to refrain from wearing a single particular perfume in an effort to accommodate employees with documented allergies, asthma or chemical sensitivities, and to avoid potentially serious health consequences to those employees, would be proper under written policies already in place at the DJFS regarding "common decency" and/or "discourteous treatment of others."

Thus, based on all of the foregoing, no reasonable jury could find any substantive difference between the "request" offered by DJFS and a "policy" codifying a request.  *See Muray v. Dawn Foods, Inc.*, No. 09-cv-12160, 2010 WL 4063731, *4 (E.D. Mich. Oct. 14, 2010) (stating that "a claim that an employer failed to 'reasonably accommodate' a disabled person cannot be based solely on minor differences between requested accommodations and provided accommodations").

Further, no reasonable jury could conclude that the accommodations proposed by DJFS were unreasonable.  DJFS offered to request staff not to wear Japanese Cherry Blossom, an accommodation specifically requested by Plaintiff initially, and Plaintiff failed to show that any other fragrance significantly affected her ability to breathe.  In addition, the evidence in the record, including Plaintiff's own admission, shows that

_____

[8]  Plaintiff suggests that Bailey-Evans admitted that there is no enforcement mechanism behind the proposed posted sign or the proposed email.  However, a review of Bailey-Evans's testimony does not support Plaintiff's characterization.  Bailey-Evans simply testified that she was not sure whether she could enforce the request through disciplinary measures, but acknowledged that "doing things that you know can cause harmful reactions" to others may violate the "common decency" or "discourteous treatment" provisions of the policy already in place, depending upon the circumstances.

Plaintiff was able to perform all essential functions of her position for two years without any accommodation despite frequent exposure to the offending perfume.

Accordingly, summary judgment is proper because Plaintiff rejected reasonable accommodations offered by DJFS.

### D.  DJFS's Participation in the Interactive Process

Finally, Plaintiff argues that DJFS failed to engage in the interactive process in good faith.  "Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046 (6th Cir. 1998) (citing 29 C.F.R. pt. 1630 App. § 1630.9).

"To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation."  29 C.F.R. § 1630.2(o)(3).  The interactive "process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."  *Id*.

Here, the crux of Plaintiff's argument in this regard is that she first reported breathing difficulties resulting from exposure to perfume in February 2008, and that she requested accommodations at that time without any response for approximately two years. In other words, Plaintiff argues that DJFS ignored Plaintiff's February 2008 requests "for more than two years, which resulted in the incident in February, 2010."  As set forth

above, however, Plaintiff was not "disabled" under the terms of the ADA as it existed prior to enactment of the ADAAA, effective January 1, 2009. Accordingly, prior to January 1, 2009, DJFS was not required to provide any accommodations to Plaintiff.

Even following the effective date of the ADAAA, the first requested accommodation by Plaintiff was via Nurse Rutan on February 12, 2010, following Plaintiff's emergency room treatment. Nurse Rutan suggested that Plaintiff's "coworkers be advised" of Plaintiff's reaction to Japanese Cherry Blossom. (Doc. 38-1, PAGEID 1533). Thereafter, DJFS began a dialogue with Nurse Rutan seeking additional information about the requested accommodation. "When the need for an accommodation is not obvious, an employer, before providing a reasonable accommodation, may require that the individual with a disability provide documentation of the need for accommodation." 29 C.F.R. pt. 1630 App. § 1630.9.

On March 2, 2010, following DJFS's request for documentation to confirm the need for the requested accommodation, Nurse Rutan responded that "[m]inimizing and limiting her allergic responses are the best recommendations that [she] can provide[,]" and suggesting that the work environment "can be controlled simply by requesting all staff to avoid some of those major triggers for [Plaintiff] out of respect." (Doc. 38-1, PAGEID 1537).

On March 11, 2010, Bailey-Evans acted upon Nurse Rutan's recommendations.

On that date, after collaborating directly with Plaintiff,[9] Bailey-Evans sent an email to staff informing them of Plaintiff's reaction to Japanese Cherry Blossom and requesting that they limit coming into contact with Plaintiff in the office unless that contact occurred in well ventilated areas.  (Doc. 36, PAGEID 1072).[10]  Plaintiff's suggestion that she takes

---

[9]  *See Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) (stating that the interactive process "is designed to encourage direct participation on behalf of both the employee and the employer" rather than through proxies or other representatives).

[10]  Plaintiff cites this portion of Bailey-Evans' deposition for the proposition that "[d]espite a request by Ms. Core that the staff be asked to cease wearing Perfume, Ms. Bailey-Evans again refused to make that simple request."  (Doc. 49, PAGEID 2097) (citing Bailey-Evans Deposition, at 61).  A review of that testimony, however, does not support such a factual contention, and, instead, supports the contention that isolating Plaintiff to the extent explained was based upon a collaboration with Plaintiff and would eliminate Plaintiff's exposure to all scents to which she purportedly suffered adverse reactions.  In full, Bailey-Evans's cited testimony with regard to the March 11, 2010 email is as follows:

> Q.  You felt this was an adequate response that would help the problem?
>
> A.  As Ms. Core and I had discussed prior to sending this e-mail out, yes.
>
> Q.  So this was based on Ms. Core's recommendation, not your own?
>
> A.  This was based on a conversation between Ms. Core and I.
>
> Q.  So Ms. Core never asked you in the e-mail to specifically ask people to refrain from wearing Japanese Cherry Blossom?
>
> A.  She probably did during the conversation; but as we talked about the concerns that she has identified, there were other triggers in the Agency, that removing Japanese Cherry Blossom was not going to provide a safe environment for her.
>
> Q.  That's what she said to you, or that's what you concluded?
>
> A.  She and I had that conversation together at the same time, and that's why I was not going to request them not to wear Japanese Cherry Blossom.
>
> Q.  Why did you think this was going to be a better solution than asking people to cease wearing the Japanese Cherry Blossom?
>
> A.  It would eliminate as much as possible any other additional triggers that Ms. Core may experience being in this public workplace.

(Doc. 36, PAGEID 1071-72).

offense to Bailey-Evans's email because it was an attempt to "isolate [her] like some modern-day Hester Prynne" is an unreasonable suggestion on its face considering Plaintiff now requests to be totally isolated from co-workers in a work-at-home setting.

Soon after Bailey-Evans's email on March 11, 2010, Plaintiff went on leave and never returned to work.  Nevertheless, on April 7, 2010, DJFS proposed allowing Plaintiff to work shorter work days and allowing Plaintiff to have her own office and her own bathroom facilities.  Plaintiff admits that she never responded to this proposed accommodation proposal.  Plaintiff's next requested accommodation was the unreasonable requested accommodation to work from home.  As an additional alternative request, Plaintiff requested a fragrance-free workplace, which is also an unreasonable accommodation request, as set forth above.

Despite Plaintiff's requesting of unreasonable accommodations, DJFS nevertheless responded by proposing additional accommodations, namely: (1) allowing Plaintiff to have and use an inhaler at work; (2) allowing Plaintiff to exit the building as needed; (3) considering any other accommodation recommended by a pulmonologist that examined Plaintiff; (4) considering any recommendations based upon results of a methacholine challenge and/or provocation challenge; (5) emailing all DJFS staff the afore-cited memorandum; and (6) posting the memorandum in conspicuous locations within the DJFS facility.  As noted above, all of these offers of reasonable accommodation were rejected.

Based on all of the foregoing, Plaintiff's contention that DJFS failed to engage in the required interactive process has no merit.

## V.  CONCLUSION

As set forth above, no reasonable jury could conclude that Plaintiff's requested accommodations were reasonable and no reasonable jury could conclude that DJFS's offered accommodations were unreasonable.  Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's claims are **DISMISSED,**[11] and this case is **CLOSED.**

**IT IS SO ORDERED.**

Date:  10/17/12                                        _s/ Timothy S. Black_____
                                                       Timothy S. Black
                                                       United States District Court

---

[11]  Because ADA claims are analyzed using "the same analysis for claims of disability discrimination under Ohio law[,]" the Court concludes that summary judgment on Plaintiff's state claim is also proper.  *Myers v. Cuyahoga County, Ohio*, 182 Fed.Appx. 510, 515 (6th Cir. 2006) (citing *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir.2004)).